## STANDARD SHEET METAL WORKS, Inc., v. A. G. ROSE, Inc., et al. *
## No. 14579.

Court of Appeal of Louisiana. Orleans.
Feb. 26, 1934.

Arthur J. O'Keefe, Jr., and Leon F. Davison, both of New Orleans, for appellants.

Walter G. Wedig, of New Orleans, for appellee.

HIGGINS, Judge.

Plaintiff brought this suit to recover from defendant the sum of $950, the balance alleged to be due under the terms of a written contract between them covering the installation of a ventilating system. The defense is that plaintiff refused to install the equipment specified in the contract and insisted upon substituting another kind which it considered equivalent to that named in the agreement, necessitating the defendant having the work performed by another contractor for the price and sum of $950; and further that plaintiff had been behind schedule in doing the work, thereby placing defendant in a position where it had been threatened by the general contractor with being penalized under a demurrage clause at the rate of $500 a day in the event the work was not completed within the time specified.

There was judgment in favor of the plaintiff, as prayed for, and defendant has appealed.

The record shows that the city of New Orleans desired to have a municipal auditorium erected. The architects drafted the plans and specifications and advertised for bids, with the result that Bond Bros. and Caldwell Bros. were the successful bidders. They subcontracted the heating, plumbing, and ventilating work to the defendant. Defendant requested a bid from the plaintiff for furnishing and erecting the ventilating system and, on February 11, 1929, plaintiff wrote the defendant as follows:

"A. G. Rose Co., Inc., 526 Loyola St., New Orleans, La.

"Gentlemen: We are pleased to name you price of twenty-three thousand two hundred dollars ($23,200.00) for furnishing and erecting ventilation for the Municipal Auditorium *as shown on plans and called for in specifications on Page #133 to 139* including all duct work in place painted as called for
*Johnson Dampers hand control*
Motors and Fans
Grills
Ozone Machinery
Mushroom air Diffusers
"all as called for in ventilation.
"Yours truly,
"Standard Sheet Metal Works, Inc.
"W. H. Patterson."
[Italics ours.]

On February 26, 1929, defendant entered into a written contract with the plaintiff "to furnish and erect the ventilation system complete for the Municipal Auditorium as per plans and specifications of Favrot & Livaudais, Ltd., architects, page #133 to #140 of the specifications, also the general clause of the specification. The ventilating equipment will be submitted immediately to us for the architect's approval." The architect's specifi-

cations referred to contain the following provision:

"In each of the fan rooms, it is required at times to use all fresh air, all recirculating air or a mixture. *This contractor is to furnish and install proper Johnson Service Company or equal hand control dampers* where marked and of a type that can be locked in any position they are set so that the right mixture of air can be obtained." (Italics ours.)

On March 14, 1929, the defendant wrote Favrot & Livaudais, Limited, architects, a letter submitting for their approval an itemized list of the equipment and materials, which included "Johnson Service hand controlled Damper, as specified," to be used in installing the ventilating system in the building.

The plaintiff and defendant both had their representatives on the job daily, and plaintiff performed all of its work in accordance with the provisions of its agreement, with the exception of the hand control dampers in each of the fan rooms. Apparently the plaintiff's officials interpreted the language "Johnson Service Company hand control dampers or equal" to mean that plaintiff had the right to manufacture dampers equivalent to the Johnson Service Company dampers and install them. Accordingly, in August, 1929, plaintiff constructed some of the dampers for the purpose of putting them in the building, but did not so inform the defendant.

On September 25, 1929, the general contractors wrote the defendant a letter calling its attention to the fact that there was undue delay in completing the ventilating system and that under the demurrage clause $500 a day would be charged if the building was not finished by December 1, 1929. On September 26, 1929, defendant advised the plaintiff in writing of the contents of this letter. On November 11, 1929, defendant again wrote plaintiff that it was not making sufficient progress with its work on the system and that defendant was placing plaintiff in default in order to protect itself against any demurrage claim. On or about November 11, 1929, a controversy arose between the plaintiff's and defendant's representatives about the installation of the six dampers in the fan rooms, plaintiff contending that it had a right to choose between installing Johnson Service Company hand control dampers, or equal hand control dampers manufactured by itself, and the defendant maintaining that the contract and specifications called for the installation of Johnson Service Company hand control dampers, as approved by the architect.

Defendant's officers, feeling that the plaintiff was in default, authorized the Johnson Service Company to install its dampers in the fan room and this was done about ten days after November 11, 1929, the date when the letter placing plaintiff in default had been written. A few days after the Johnson hand control dampers had been installed, plaintiff brought the dampers which they had constructed to the building, but was notified by the general superintendent of the job that this work had already been done. The plaintiff then took the dampers back to its shop. The building was completed in time, so that no demurrage charges accrued. Defendant deducted from the plaintiff's contract price of $23,200 the sum of $950, covering the furnishing and installation of the Johnson hand control dampers, and all matters were settled between plaintiff and defendant during June of 1930, with the exception of this claim. On December 5, 1930, plaintiff brought the present suit.

The decision of the case depends upon the interpretation to be placed upon the following language contained in a provision of the specifications, which formed part of the agreement:

"This contractor is to furnish and install proper Johnson Service Company or equal hand control dampers."

Solis Seiferth, an architect sworn as an expert, testified with reference to this clause as follows:

"Q. What would you then mean by the words 'or equal' in the specifications? A. The only purpose of such a clause in an architect's specifications is it should not absolutely bar competitive equipment, or bar from competition certain products he may know nothing about. For instance, he will specify two particular makes or equal because there are probably twenty or thirty others which may be submitted which he would be willing to approve and naturally an architect is the only one who could approve those 'or equal' substitutions."

He stated that it was customary to place in building contracts and specifications a provision giving the architect the right to approve the specified materials or substitutions which are to go into the construction of the building. He said:

"A. It is necessary because someone must be the judge of whether a thing is equal or not, and, under the contract the architect is the judge of that."

There is also evidence in the record to the effect that the practice of making the archi-

tect the judge of whether or not the materials and equipment used in the construction of a building are satisfactory and in keeping with the plans and specifications, is in compliance with the regulations of the American Institute of Architects.

In the instant case, it appears that, in submitting its bid in accordance with the plans and specifications, the plaintiff expressly stated that the "Johnson Service Company hand control Dampers" would be used in the construction of the ventilating system. The defendant then, as required by both contracts, submitted to the architects for approval a list of the materials to be used in the construction of the ventilating system and also expressly named the "Johnson Service hand control dampers." Therefore it is clear that, after the architect approved this particular kind of damper, the only way that the plaintiff could substitute another which it had manufactured would be to get the approval of the architect. Plaintiff does not pretend that it even attempted to do so, but took the initiative and in August, 1929, began to construct dampers which its officers considered equal to the Johnson dampers. When defendant was apprised of plaintiff's intention not to install Johnson dampers, but those of its own design and construction, defendant was within its rights in objecting, and insisting that the Johnson dampers, which had been specified by plaintiff in its bid and had been approved by the architect, be used. When the plaintiff persisted in its refusal to use Johnson dampers, defendant had a right to place plaintiff in default, which was done by means of the letter of November 11, 1929, and then have the work performed and charged to the plaintiff.

Industrious counsel for the plaintiff has referred us to the case of Camp et al. v. Neufelder et al., 49 Wash. 426, 95 P. 640, 641, 22 L. R. A. (N. S.) 376. In that case the specifications required the subcontractor to furnish and erect sidewalk lights with reflecting prism lens "of the W. B. Jackson make, or equal." The contract also provided that the work should be performed to the satisfaction of the architect named therein, who had the right to approve or reject any and all work. The subcontractor submitted to the architect for approval several prism lights which the subcontractor considered equal to the W. B. Jackson lights. The architect refused to examine them, stating that in his opinion there was no prism light equal to the W. B. Jackson light. The subcontractor installed the W. B. Jackson lights and then brought suit to recover the sum of $600, representing the cost of furnishing and installing the Jackson lights over and above what it would have cost to furnish and install the tendered lights. The trial judge dismissed the suit and the appellate court reversed the judgment on the ground that the subcontractor was within his right in submitting for approval prism lights which the subcontractor believed were equal to the W. B. Jackson light and was entitled to have a reasonable and fair opinion of the architect expressed upon the question and not an arbitrary one. There was a strong dissenting opinion on the ground that, as the architect had been made the sole judge of the matter under the terms of the contract, the subcontractor could not complain of his adverse decision.

While the language involved in that case which required interpretation is practically identical with the controversial clause in the instant case, we do not believe that case decisive of the issue here presented, because plaintiff admits that it never submitted to the architect for his approval the proposed substitutions. In fact, it appears from the record that the plaintiff did not appeal to the architect when the defendant refused to permit the plaintiff to install its dampers, but, without complaint or protest, stood by until the job was finished. Therefore we do not have before us the question presented there of whether or not an architect can arbitrarily refuse to permit a substitution which is equal to the expressly named material or equipment in the plans and specifications.

It appears that the sum of $950 was a reasonable and fair price. The defendant had taken the precaution, before letting the subcontract to the plaintiff, to place a coverage order with the Johnson Service Company to insure itself that this equipment would be obtainable at the proper time and at a fair price. Plaintiff's own evidence shows that to manufacture and install the class of dampers which they sought to place in the building would cost approximately $800. This is a further confirmation of the fact that the sum of $950 was not excessive.

For the reasons assigned, the judgment appealed from is annulled, avoided, and reversed, and it is now ordered that there be judgment herein in favor of the defendant A. G. Rose, Inc., dismissing plaintiff's suit at its cost.

**Reversed.**